UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT RICHARD HANSON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JOHANNA SMITH, DR. SCOTT DAVID LOSSMAN; DR. APRIL CHARLENE DAWSON; DR. MYUNG AE SONG DO; MS. RONA SIEGERT; JOHN and JANE DOES, one through ten; CORRECTIONAL MEDICAL SERVICES; and CORIZON MEDICAL SERVICES,<br><br>　　　　　　Defendants. | Case No. 1:11-CV-00525-BLW<br><br>**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER** |

Pending before the Court are Defendants Smith and Siegert's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 35.) The Court finds that the decisional process would not be significantly aided by oral argument, and thus the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Having reviewed the record, and for the reasons discussed herein, the Court grants in part and denies in part the Motion to Dismiss and enters the following Order.

## BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC) and is currently housed at Idaho State Correctional Institution (ISCI). He is proceeding in

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 1**

this action pro se. Beginning some time in 2009, Plaintiff alleges he began having problems urinating and had an enlarged prostate gland, so a biopsy was performed at an off-site urology clinic. (Compl., Dkt. 3, p. 6.) Plaintiff contends that Defendant Dawson refused to provide him the results of his biopsy, and that he had to wait until October 2010 when Plaintiff finally returned to the urologist who told him the results of the biopsy and that he had prostate cancer. (*Id.*, p. 7.) Plaintiff had surgery in January 2011 to remove his prostate gland, and alleges that ISCI medical staff then delayed Plaintiff's follow-up visit to the surgeon until August 2011, when he was finally able to complain to the surgeon that "he had been experiencing a lot of continued difficulty or problems." (*Id.*) Plaintiff contends that "Defendants acted with malicious intent to deliberately delay Plaintiff's medical treatment in order to save money" which resulted in "many days of unnecessary pain and great emotional distress." (*Id.*, p. 8.)

On October 31, 2011, Plaintiff filed his Complaint alleging that Defendants subjected him to cruel and unusual punishment and were deliberately indifferent to his serious medical needs throughout the diagnosis, treatment and follow-up care for his prostate cancer in violation of 42 U.S.C. § 1983 and state medical malpractice laws. (Dkt. 3.) The Court then sent Plaintiff an Order of Conditional Filing, advising him that he could not proceed with his case until the Court issued an initial review order. (Dkt. 6.)

The Initial Review Order was issued on April 23, 2012. (Dkt. 12). The Court denied Plaintiff's application for in forma pauperis status and permitted Plaintiff to proceed only against the individual Defendants at that time. (*Id.*, p. 10.)

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 2**

Defendants Smith and Siegert move to dismiss that complaint against them on the grounds that they were not personally involved with the alleged constitutional violations, there is insufficient facts to support negligence and there is no legal basis for a state constitutional claim. (Dkt. 35.)

**1.      Standard of Law Applicable to a Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A defendant may move to dismiss a complaint if that complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the

line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (alteration omitted).

The Supreme Court has identified two "working principles" that underlie this dismissal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When a court is considering a motion to dismiss, it must "'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007) (per curiam)).

2.  **Standard of Law for Section 1983 Claims**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 4**

Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

3.  **Eighth Amendment Standard of Law**

Plaintiff asserts that Defendants Smith and Siegert's actions violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment requires that prisoners receive minimally adequate medical care, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently

harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 6**

denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to appropriate medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (internal quotation marks omitted).

4.  **Discussion** - **Warden Smith**

Plaintiff has not sufficiently alleged that Defendant Smith personally participated in his alleged inadequate medical care or that she is subject to supervisory liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Starr*, 652 F.3d at 1207. Rather, Plaintiff "tenders naked assertions devoid of further enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted).

Plaintiff alleges that Defendant Smith, as Warden of ISCI, is "legally responsible" for ISCI's operations and for the subsequent welfare or well being of all inmates housed at that institution. Plaintiff makes no other specific allegations as to Defendant Smith in

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 7**

his Complaint. On July 27, 2011, Plaintiff submitted an Offender Concern Form to Warden Smith stating that he would like to meet with her "about ongoing problems I am experiencing . . . can you please help." (Dkt. 43, p. 5.)

There is nothing in the Complaint to plausibly suggest that Defendant Smith was indifferent to Plaintiff's medical needs and that a reasonable person in her position would have determined that Plaintiff's medical treatment was inferior. *See Snow*, 533 U.S. at 202. The grievance submitted to Smith did not contain even a modicum of information from which she could reasonably know of a possible constitutional injury to Plaintiff.

Further, to the extent that Plaintiff seeks injunctive relief and a claim against Warden Smith may be appropriate in that context, Plaintiff has been released from prison (*see* Dkt. 45) and any claim for injunctive relief would be moot. The Ninth Circuit has held that a plaintiff may not be awarded injunctive relief relative to a facility where he is no longer incarcerated if there is no reasonable expectation that he will be housed there again in the near future. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1990). Similarly, United States Supreme Court precedent holds that relief is speculative when it depends upon the plaintiff violating the law in the future. *See Los Angeles v. Lyons*, 461 U.S. 95 (1983). Similarly, Plaintiff's claim against Defendant Smith for violations of the Idaho Constitution will also be dismissed.

Lastly, Plaintiff has not shown any personal involvement by Defendant Smith to support his claim for "malpractice." (*See* Compl. ¶ 30.) Plaintiff has not pleaded factual content that allows the court to draw the reasonable inference that Defendant Smith is

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 8**

liable for the misconduct alleged and does not satisfy Rule 8.  Plaintiff's claim against Defendant Smith will be dismissed.

5.      **Discussion - Siegert**

Plaintiff alleges that Defendant Siegert is responsible "for the oversight and supervision of the medical care provided to inmates." (Compl., pp. 3-4.)[1]  This is the only specific allegation against Siegert.  In response to Defendants' Motion to Dismiss, Plaintiff attached a letter from Defendant Siegert to Plaintiff and an Offender Concern form Plaintiff addressed to her.  In a letter dated October 21, 2010, Defendant Siegert, in apparent response to an offender concern form, informs Plaintiff that medical staff at SICI were awaiting Dr. Fredrickson's recommendations regarding treatment and to contact Gen Brewer, an LPN in the SICI medical unit, with further questions or concerns.  (Dkt. 43, p. 7.)  In a grievance dated December 29, 2010 and addressed to Defendant Siegert, Plaintiff stated that he was "having trouble getting started with treatment for [his] prostate cancer" and that he's concerned about the delays.  (Dkt. 43, p. 5.)  Defendant Siegert responded on January 5, 2011 that Plaintiff had been seen by a urologist on January 4, 2011, to discuss treatment options and that he should refer questions to SICI medical as they would have the information he needs.  (*Id.*)

Liability may attach under § 1983 when there is a sufficient causal connection

---

[1] This allegation (Compl., ¶ 9) actually does not name Defendant Siegert but is blank where a defendant's name should be.  However, due to the fact that she is the only defendant named in the caption of the case but not listed specifically in Plaintiff's Complaint under "Defendants", the Court assumes this allegation applies to her.  It appears that Defendants assume the same. (*See* Dkt. 35-1, p. 2.)

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 9**

between the supervisor's wrongful conduct and the constitutional violation. *See Starr*, 652 F.3d at 1207. Even non-medical[2] personnel may be subject to liability if they have reason to believe, or actual knowledge, that prison doctors are mistreating, or not treating, a prisoner. *See McGee*, 721 F.3d at 483. The Court finds that Plaintiff has sufficiently stated a claim against Defendant Siegert and may continue with his claim against her at this stage.

Plaintiff has also asserted a constitutional violation pursuant to the Idaho Constitution. Plaintiff has not shown that the Idaho State Constitution offers any greater protection than the United States Constitution, *see State v. Sharpe*, 129 Idaho 693, 931 P.2d 1211 (Idaho 1997), and thus, resolution of the federal constitutional issues will necessarily resolve Plaintiff's grievances brought under the state constitution. No additional proof is needed from Plaintiff to proceed on his state constitutional claim.

The Court will also allow Plaintiff to proceed on his state law claim as well at this time. It may well be that it is barred by the Idaho Tort Claims Act but as it is not clear whether any discovery, even initial disclosures, have taken place in this case, the Court will allow Plaintiff the benefit of discovery.

The Court will deny Defendant Siegert's motion to dismiss without prejudice. Defendant may reassert these arguments again at the summary judgment stage.

---

[2] The Court notes that Defendant Siegert, the Health Services Director, is an R.N.

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 10**

# ORDER

**IT IS ORDERED:**

1) Defendants Smith and Siegert's Motion to Dismiss Pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART. The Motion as to Defendant Siegert is denied without prejudice.

2) The claims against Defendant Smith are DISMISSED with prejudice.

# SCHEDULING ORDER

**IT IS ORDERED** that the following pre-trial schedule as to *all* remaining Defendants shall govern this case:

1. **Disclosure of Relevant Information and Documents:** If the parties have not already done so, **within 30 days** after entry of this Order, the parties shall provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to

be filed ex parte under seal, and not provided by email or mail. The continuing duty to disclose relevant documents and information continues until the date of trial or the date the case is dismissed.

2. **<u>Amendment of Pleadings and Joinder of Parties</u>**: All motions to amend pleadings or to join parties shall be filed within **60 days** after entry of this Order.

3. **<u>Completion of Discovery and Requests for Subpoenas:</u>** All discovery shall be completed on or before **90 days** after entry of this Order. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made within **60 days** after entry of this Order. No requests for subpoenas duces tecum will be entertained after that date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is set for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and

Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

4. **Depositions**: Depositions, if any, shall be completed within **90** days after entry of this Order. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by 10 days' written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 13**

5. **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs **within 30 days** after the close of discovery. Responsive briefs to such motions shall be filed **within 30 days** after service of motions. Reply briefs, if any, shall be filed **within 14 days** after service of responses. **Submission of an earlier motion for summary judgment addressing procedural issues does not foreclose any party from later filing a motion for summary judgment on the merits.**

6. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho. **Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**

7. **Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference, and the case shall then be referred to the Court's ADR Director.



DATED: **September 29, 2014**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER and SCHEDULING ORDER - 15**